UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARCUS D. MAYS #218101,                                   Case No. 2:19-cv-00217

        Plaintiff,                                              Hon.  Hala Y. Jarbou
                                                         U.S. District Judge

    v.

UNKNOWN SKYTTA, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

This is a civil rights action brought by state prisoner Marcus D. Mays pursuant to 42 U.S.C. § 1983.  Mays alleges a total of 50 claims against 14 Department of Corrections (MDOC) employees who work at the Baraga Correctional Facility (AMF).  According to Mays, Defendants beat him while he was on the way to the medical unit.  Mays says he requested medical treatment for the resulting injuries, but Defendants denied his requests.  He alleges Defendants used excessive force against him and were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.  He also says that Defendant retaliated against him, in violation of the First Amendment.

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment based on Mays's failure to exhaust his administrative remedies.

(ECF No. 15.)   Defendants also ask the Court to dismiss Mays's official capacity claims.

Mays pursued two relevant grievances through Step III: grievances **AMF-18-05-1318-26a** and **AMF-18-06-1379-26a**.   Both grievances were denied on the merits at Steps I, II, and III.   The first of the two grievances – grievance **AMF-18-05-1318-26a** – was filed on May 21, 2018, and it complained about Mays being assaulted on that same day.   The second of the two grievances – grievance **AMF-18-06-1379-26a** – was filed on June 5, 2018 at Step I, and it complained about being denied medical care on the five days following the assault.   On appeal to Steps II and III, Mays inserted new claims based on later-occurring facts.   In response to his appeals, the MDOC reviewed the investigation into his Step I claims, but did not address any of the new claims.   Thus, Mays failed to exhaust any claims arising after May 26, 2018.

Based upon the grievance records, Defendants conceded all Eighth Amendment excessive-force and deliberate-indifference claims that Mays raised *at Step I* of grievances **AMF-18-05-1318-26a** and **AMF-18-06-1379-26a**.   These are claims 2, 4, 6, 8, 10, 12, 14 and 17-21.   Defendants assert that Mays failed to exhaust companion retaliation claims, i.e. the First Amendment retaliation claims based upon the same set of facts giving rise to the conceded claims.   These are claims 3, 5, 7, 9, 11, 13 and 15.   The undersigned disagrees with Defendants' challenge to these claims.   The undersigned, however, concludes that all of Mays's remaining claims (1, 16, and 22-50) were not properly exhausted because Mays failed to raise these claims

at Step I of grievances **AMF-18-05-1318-26a** and **AMF-18-06-1379-26a**, and the MDOC did not address them on appeal.

It is respectfully recommended that the Court grant Defendants' motions for summary judgment as to claims 1, 16, and 22 through 50, and dismiss those claims without prejudice.

## II.     Additional Relevant Procedural History

Mays filed his verified complaint on October 15, 2019.   (ECF No. 1.)   Mays' case was initially referred to Prisoner Early Mediation but failed to settle. (ECF Nos. 8, 9, and 10.)

On May 8, 2020, Defendants filed the pending summary judgment motion and supporting brief.    (ECF Nos. 15, 16.)    Mays responded (ECF No. 26), and Defendants replied (ECF No. 30).

## III.     Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*,

---

[1]     Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury.   *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV.    Factual Allegations

The undersigned has attempted to summarize Mays's claims.   Mays's claims and allegations supporting the claims are listed in the table below.[2]

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1. | Sgt. Pynnonen | First Amendment Retaliation | 5/14/18 | Threatened tickets and put Mays at a stage 2 (instead of a 5 on the incentive program) (ECF No. 1, PageID.7) |
| 2. | Skytta | Eighth Amendment Excessive Force | 5/21/18 | Skytta, Frankie, and Holley allegedly kicked and punched Mays repeatedly, while he was on the ground. (ECF No. 1, PageID.5.) |
| 3. | Skytta | First Amendment Retaliation | 5/21/18 | Skytta, Frankie, and Holley allegedly kicked and punched Mays repeatedly, while he was on the ground. (ECF No. 1, PageID.5.) |
| 4. | Sgt. Pynnonen | Eighth Amendment Excessive Force | 5/21/18 | Pynnonen allegedly put Mays in the choke hold. (ECF No. 1, PageID.5) |
| 5. | Sgt. Pynnonen | First Amendment Retaliation | 5/21/18 | Pynnonen allegedly put Mays in a choke hold. (ECF No. 1, PageID.5.) |
| 6. | Holley | Eighth Amendment | 5/21/18 | Skytta, Frankie, and Holley allegedly kicked and punched Mays repeatedly, |

[2]    Claims highlighted in green are claims that Defendants concede were properly exhausted.   Claims highlighted in yellow are challenged claims that have a genuine issue of fact precluding their dismissal for a lack of exhaustion.   And claims highlighted in red are claims that the undersigned concludes were not properly exhausted.

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| | | Excessive Force | | while he was on the ground. (ECF No. 1, PageID.5.) |
| 7. | Holley | First Amendment Retaliation | 5/21/18 | Skytta, Frankie, and Holley allegedly kicked and punched Mays repeatedly, while he was on the ground. (ECF No. 1, PageID.5.) |
| 8. | Frankie | Eighth Amendment Excessive Force | 5/21/18 | Skytta, Frankie, and Holley allegedly kicked and punched Mays repeatedly, while he was on the ground. (ECF No. 1, PageID.5.) |
| 9. | Frankie | First Amendment Retaliation | 5/21/18 | Skytta, Frankie, and Holley allegedly kicked and punched Mays repeatedly, while he was on the ground. (ECF No. 1, PageID.5.) |
| 10. | Snyder | Eighth Amendment Excessive Force | 5/21/18 | Claimed that Snyder and Corrigan kicked Mays in the stomach twice. (ECF No. 1, PageID.5) |
| 11. | Snyder | First Amendment Retaliation | 5/21/18 | Snyder and Corrigan kicked Mays in the stomach twice.   (ECF No. 1, PageID.5) |
| 12. | RN Corrigan | Eighth Amendment Excessive Force | 5/21/18 | Snyder and Corrigan kicked Mays in the stomach twice.   (ECF No. 1, PageID.5) |
| 13. | RN Corrigan | First Amendment Retaliation | 5/21/18 | Snyder and Corrigan kicked Mays in the stomach twice.   (ECF No. 1, PageID.5) |
| 14. | Bastion | Eighth Amendment Deliberate Indifference | 5/21/18 | Bastion bserved Mays being beaten and failed to protect. (ECF No. 1, PageID.5) |
| 15. | Pynnonen | First Amendment Retaliation | 5/21/18 | Pynnonen threatened to take away Mays's property and gave him more tickets. Moreover, he allegedly said, "you were a stage 5, now you are a stage 1." (ECF No. 1, PageID.5) |
| 16. | Unknown RN[3] | Eighth Amendment Deliberate Indifference | 5/21/18 | Mays told unknown RN about his injuries and was still denied treatment. (ECF No. 1, PageID.9) |

[3]      According to Fed. R. Civ. P. 4(m), "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."   Here, more than a year has passed since Mays initiated this lawsuit and Mays has failed to identify the defendant in claim 16 and serve that person.   Thus, the undersigned respectfully recommends the Court dismiss claim 16 without prejudice.

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 17. | RN Coon | Eighth Amendment Deliberate Indifference | 5/22/18 | Mays told RN Coon about his injuries and was denied treatment. (ECF No. 1, PageID.9.) |
| 18. | RN Rajala | Eighth Amendment Deliberate Indifference | 5/23/18 | Mays told RN Rajala about his injuries plus a migraine headache, and was denied treatment (first shift). (ECF No. 1, PageID.9.) |
| 19. | RN Sunberg | Eighth Amendment Deliberate Indifference | 5/23/18 | Nicole Sunbung was shown injuries and denied treatment. (ECF No. 1, PageID.9) |
| 20. | RN Sunberg | Eighth Amendment Deliberate Indifference | 5/25/18 | Mays received no response from nurse Nicole Sunberg. (ECF No. 1, PageID.9.) |
| 21. | RN Corrigan | Eighth Amendment Deliberate Indifference | 5/26/18 | While doing routine medical rounds, RN Corrigan told Mays that she had better things to do with her time than treat Mays's injuries, which, according to Mays, were a swollen painful jaw, black eye and lip, and small knot on his head, and a bruised and battered body. (ECF No. 1, PageID.9-10.) |
| 22. | RN Corrigan | Eighth Amendment Deliberate Indifference | 5/27/18 | Mays was denied medical attention by RN Corrigan. (ECF No. 1, PageID.11.) |
| 23. | RN Rajala | Eighth Amendment Deliberate Indifference | 5/27/18 | Mays was denied medical attention by RN Rajala. (ECF No. 1, PageID.11.) |
| 24. | RN Corrigan | Eighth Amendment Deliberate Indifference | 5/29/18 | Mays was denied medical attention by RN Corrigan. (ECF No. 1, PageID.11.) |
| 25. | RN Coon | Eighth Amendment Deliberate Indifference | 5/29/18 | Mays was denied medical attention by RN Coon. (ECF No. 1, PageID.11.) |
| 26. | RN Corrigan | Eighth Amendment Deliberate Indifference | 5/30/18 | Mays was denied medical attention by RN Corrigan. (ECF No. 1, PageID.12.) |
| 27. | RN Finigan | Eighth Amendment Deliberate | 6/1/18 | Mays was denied medical attention by RN Finigan. (ECF No. 1, PageID.13.) |

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| | | Indifference | | |
| 28. | RN Usitalo | Eighth Amendment Deliberate Indifference | 6/1/18 | Mays was denied medical attention by RN Usitalo. RN also said that he was always ugly, but now he is really ugly. (ECF No. 1, PageID.14.) |
| 29. | RN Sunberg | Eighth Amendment Deliberate Indifference | 6/3/18 | RN Sunberg denied Mays medical treatment during her first shift. (ECF No. 1, PageID.15.) |
| 30. | RN Sunberg | Eighth Amendment Deliberate Indifference | 6/3/18 | RN Sunberg again denied Mays medical treatment during her second shift.   (ECF No. 1, PageID.15.) |
| 31. | RN Duquette | Eighth Amendment Deliberate Indifference | 6/4/18 | Mays was denied medical attention by RN Duquette. (ECF No. 1, PageID.17.) |
| 32. | RN Coon | Eighth Amendment Deliberate Indifference | 6/4/18 | RN Coon denied Mays medical attention. (ECF No. 1, PageID.17.) |
| 33. | RN Duquette | Eighth Amendment Deliberate Indifference | 6/5/18 | RN Duquette denied Mays medical attention. (ECF No. 1, PageID.17.) |
| 34. | RN Coon | Eighth Amendment Deliberate Indifference | 6/6/18 | Mays was denied medical attention by Coon.   (ECF No. 1, PageID.17.) |
| 35. | Unknown RN | Eighth Amendment Deliberate Indifference | 6/6/18 | During the second shift of the day, the unknown RN denied Mays medical care. (ECF No. 1, PageID.17.) |
| 36. | RN Sunberg | Eighth Amendment Deliberate Indifference | 6/10/18 | Mays was denied medical attention by Sunberg. (ECF No. 1, PageID.17.) |
| 37. | RN Johnson | Eighth Amendment Deliberate Indifference | 6/10/18 | During RN Johnson's second shift, she denied Mays medical attention. (ECF No. 1, PageID.17.) |
| 38. | RN Johnson | Eighth Amendment Deliberate Indifference | 6/14/18 | During RN Johnson's first shift, she denied Mays medical attention. (ECF No. 1, PageID.18.) |
| 39. | RN Corrigan | Eighth Amendment Deliberate | 6/15/18 | Mays was denied medical attention by Corrigan. (ECF No. 1, PageID.19.) |

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| | | Indifference | | |
| 40. | RN Finigan | Eighth Amendment Deliberate Indifference | 6/15/18 | Mays was denied medical attention by David Rinsal (or possibly Finigan). (ECF No. 1, PageID.19.) |
| 41. | RN Corrigan | Eighth Amendment Deliberate Indifference | 6/16/18 | Mays was denied medical attention by Corrigan. (ECF No. 1, PageID.19.) |
| 42. | RN Duquette | Eighth Amendment Deliberate Indifference | 6/17/18 | Mays was denied medical attention by Trudy Duquette. (ECF No. 1, PageID.19.) |
| 43. | RN Sunberg | Eighth Amendment Deliberate Indifference | 6/18/18 | Mays was denied medical attention by RN Sunberg during her first shift. (ECF No. 1, PageID.19.) |
| 44. | RN Sunberg | Eighth Amendment Deliberate Indifference | 6/18/18 | Mays was denied medical attention by RN Sunberg during her second shift. (ECF No. 1, PageID.19.) |
| 45. | RN Duquette | Eighth Amendment Deliberate Indifference | 6/19/18 | Mays was denied medical attention by Duquette. (ECF No. 1, PageID.20.) |
| 46. | RN Coon | Eighth Amendment Deliberate Indifference | 6/19/18 | Mays was denied medical attention by Coon. (ECF No. 1, PageID.20.) |
| 47. | RN Snyder | Eighth Amendment Deliberate Indifference | 6/21/18 | Mays was denied medical attention by Synder and written up for a ticket. (ECF No. 1, PageID.20.) |
| 48. | RN Snyder | First Amendment Retaliation | 6/21/18 | Mays was denied medical attention by Synder and written up for a ticket. (ECF No. 1, PageID.20.) |
| 49. | Sgt. Pynnonen | Eighth Amendment Deliberate Indifference | 6/21/18 | Sgt. Pynnonen threatened Mays and said that he would beat his ass if he continued to ask for medical attention. (ECF No. 1, PageID.20.) |
| 50. | Sgt. Pynnonen | First Amendment Retaliation | 6/21/18 | Sgt. Pynnonen threatened Mays and said that he would beat his ass if he continued to ask for medical attention. (ECF No. 1, PageID.20.) |

## V.    Summary of Relevant Grievances

In 2018, Mays pursued nine grievances through Step III.   Among those grievances, however, only two are relevant to the claims in this case.   The two grievances are summarized below.

| Grievance Number | MDOC Defendants Named | Issued Grieved | Outcome of Grievance | ECF No. |
|---|---|---|---|---|
| AMF-18-05-1318-26a | Holly, Skytta, Pynnonen, Frankie, Synder, Corrigan, Bastion, Coronado, Minerick, Warden, Pat Mayo | **Issues Raised at Step I:**<br><br>1.  3/29/18 – threatened by Snyder. (254)<br>2.  4/25/18 – threatened by Coronado. (254)<br>3.  5/21/18 – Holley, Skytta, Pynnonen and Frankie allegedly beat up Mays. Also, Mays was allegedly kicked in the stomach by RN Snyder and Corrigan. Bastian stood and watched the entire episode. Mays was denied medical attention after the incident by Snyder and Corrigan. (255)<br><br>**Issues Raised on Appeal:**<br><br>4.  5/14/18 – Pynonnnen threatened him. Specifically, he said "you were at a stage 5, now you are at a stage 2." (255)<br>5.  5/15/18 – Mays was subject to threatening behavior by Pynnonen.   (255)<br>6.  6/2/18 – Mays was told by the Warden and Pat Mayo that he better sign off these grievances or be placed on grievance restriction and written a misconduct.   (255)<br>7.  6/3/18 Threatened by Minerick that he would be placed on grievance restriction. (255) | Denied at Step I; denial upheld through Step III | ECF No. 16-11, PageID.249-255. |
| AMF-18-06-1379-26a | Holly, Skytta, Pynnonen, Frankie, Snyder, Corrigan, Coon, Usitalo, Rajala, | **Issues Raised at Step I:**<br><br>1.  3/29/18 – Snyder told Mays that he wasn't going to get away with his lawsuit against her. (260)<br>2.  5/21/18 – Mays was beaten up by Holly, Skytta, Pynnonen, Frankie, Snyder, and Corrigan. Snyder and Corrigan denied | Denied at Step I; denial upheld through Step III | ECF No. 16-12, PageID.256-265 |

| Grievance Number | MDOC Defendants Named | Issued Grieved | Outcome of Grievance | ECF No. |
|---|---|---|---|---|
| | Sundberg, Rinigan (Finegan?), Duquette | medical treatment after the incident. (swollen jaw, swollen eye, busted lip) (260)<br>3. 5/21/18 – During Dawn Coon's first shift, she denied Mays medical treatment. (260)<br>4. 5/21/18 – During RN Usitalo's second shift, she denied medical treatment. (260)<br>5. 5/22/18 – During Dawn RN Coon's first shift, she denied medical treatment. (261)<br>6. 5/22/18 (second shift) – Dawn Coon denied medical treatment 261 (still gave him his meds though)<br>7. 5/23/18 – Rajala denied medical treatment. (261)<br>8. 5/23/18 – Rajala denied medical treatment. (261)<br>9. 5/24/18 – RN Unknown denied medical treatment. (261)<br>10. 5/24/18 – Sundberg denied medical treatment. (261)<br>11. 5/25/18 (first shift) – Sundberg denied medical treatment. (261)<br>12. 5/25/18 (second shift) – RN Unknown denied medical treatment. (261)<br><br>**Issues Included on Appeal:**<br><br>13. 5/26/18 – Corrigan denied medical treatment. (261) (she had better things to do with her time)<br>14. 5/29/18 – Rajala denied medical treatment. (263) (complained of migraine headache along with his other injuries)<br>15. 5/29/18 – Rajala denied medical treatment. (263)<br>16. 5/30/18 – Corrigan denied medical treatment. (263)<br>17. 5/30/18 (second shift) – Corrigan denied medical treatment. (263)<br>18. 6/1/18 – Finigan denied medical treatment. (263) (some comment that we don't care about you | | |

| Grievance Number | MDOC Defendants Named | Issued Grieved | Outcome of Grievance | ECF No. |
|---|---|---|---|---|
| | | Mays and we have the best lawyers you can buy…)<br>19. 6/1/18 – Usitalo denied medical treatment. (263) (you were already ugly, now you're really ugly…)<br>20. 6/2/18 – Sundberg denied medical treatment. (263)<br>21. 6/2/18 – Usitalo denied medical treatment. (263) (still gave him meds unrelated to the 5/21/18 incident.<br>22. 6/3/18 (first shift) – Sundberg denied medical treatment. (264)<br>23. 6/3/18 (second shift) – Sundberg denied medical treatment. (264)<br>24. 6/3/18 – Snyder denied medical treatment. (264)<br>25. 6/4/18 – Duquette denied medical treatment. (264)<br>26. 6/4/18 – Usitalo denied medical treatment. (264)<br>27. 6/5/18 – Duquette denied medical treatment. (264)<br>28. 6/6/18 – Coon denied medical treatment. (264)<br>29. 6/6/18 – Coon denied medical treatment. (264)<br>30. 6/10/18 – Sundberg denied medical treatment. (264)<br>31. 6/10/18 (second shift) – Johnson denied medical treatment. (264)<br>32. 6/14/18 (first shift) – Johnson denied medical treatment. (265)<br>33. 6/14/18 (second shift) – Rinigan (Finegan?) denied medial treatment. (265)<br>34. 6/15/18 – Corrigan denied medical treatment. (265)<br>35. 6/15/18 – Rinigan (Finegan?) denied medical treatment. (265)<br>36. 6/16/18 – Corrigan denied medical treatment. (265)<br>37. 6/16/18 – Usitalo denied medical treatment. (265)<br>38. 6/17/18 – Duquette denied medical treatment. (265)<br>39. 6/17/18 – Usitalo denied medical treatment. (265) | | |

| Grievance Number | MDOC Defendants Named | Issued Grieved | Outcome of Grievance | ECF No. |
|---|---|---|---|---|
| | | 40. 6/18/18 (first shift) – Sundberg denied medical treatment. (265) 41. 6/18/18 – Sundberg denied medical treatment. (265) 42. 6/19/18 – Duquette denied medical treatment. (265) 43. 6/19/18 – Coon denied medical treatment. (265) 44. 6/21/18 – Snyder denied medical treatment. (265) 45. 6/21/18 – Pynnonen came to his cell and said that he would beat his ass if Mays kept asking for medical attention. (265) Note: <ul><li>Step II: Mentioned 5/27/18 and 5/28/18 – Corrigan denied medical treatment. (258)</li><li>Step III: Mentioned 6/11/18 – Snyder denied medical treatment. (258)</li></ul> | | |

## VI.    Exhaustion Legal Standards

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.    *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).    "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."    *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).    Accordingly, summary judgment in favor of the party with the burden of persuasion "is

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

- 13 -

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.   In the Court's view, this objective was achieved in three ways.   First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."   *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'"  *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration.   *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.   *Id.* at ¶ P.   If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.   *Id.* at ¶¶ P, V.   The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.    The Policy Directive also provides the following directions for completing

grievance forms: "The issues should be stated briefly but concisely.   Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).   Dates, times, places and names of all those involved in the issue being grieved are to be included."   *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.   MDOC Policy Directive 03.02.130 at ¶¶ T, BB.   The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.   *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF.   The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.   *Id.* at ¶¶ T, FF.   The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.   *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved."   *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to

Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130.   *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.   *Id.*   Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.   The prisoner will be promptly notified that an extension of time is needed to investigate the grievance.   *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.   It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

### VII. Analysis of Mays's Claims

#### a. Conceded Claims (Claims 2, 4, 6, 8, 10, 12, 14 and 17-21)

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

Defendants concede that Mays's Eighth Amendment deliberate-indifference and excessive-force claims based on events on May 21, 2018 were properly exhausted in either grievance **AMF-10-05-1318-26a** or **AMF-18-06-1379-26a**.  (ECF No. 16, PageID.160-161.)   As a result, the undersigned concludes that claims 2, 4, 6, 8, 10, 12, 14 and 17- 21 were properly exhausted.

### b. Retaliation Claims that are Challenged, but were Properly Exhausted (Claims 3, 5, 7, 9, 11, 13 and 15)

Defendants argue that Mays failed to properly exhaust every First Amendment retaliation claim because "Mays never filed a grievance complaining that *any* of the defendants violated his First Amendment rights by retaliating against him."  (ECF No. 16, PageID.161.)   Essentially, Defendants are challenging the adequacy of grievances **AMF-18-05-1318-26a** and **AMF-18-06-1379-26a** to provide notice of Mays's First Amendment retaliation claims because Mays did not specifically state that Defendants retaliated against him.   The undersigned disagrees.

Relevant case law does strongly suggest that a prisoner's Step I grievance need not be written with such exactitude to inform prison officials of the prisoner's specific "'legal theories and facts that correspond to all the required elements of a particular legal theory.'"   *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (quoting *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) (abrogated on other grounds)).   Similarly, in *Jones*, a prisoner's failure to name a defendant at Step I during the grievance process does not *per se* render the grievance inadequate to give notice as to a claim

- 18 -

against the unnamed defendant.  *Jones*, 549 U.S. at 219 (2007).  In short, the standard for reviewing the adequacy of a Step I grievance is low.

Claims 3, 5, 7, 9, 11, 13, and 15 are First Amendment retaliation claims. Those same claims are also companion claims to claims 2, 4, 6, 8, 10, 12, and 14 because both sets of claims are based upon the same set of allegations: Mays's claim that Defendants beat him on May 21, 2018.  As discussed in Section VI(a), Defendants conceded the latter group of claims (Eighth Amendment excessive-force claims) were exhausted because Mays complained about being beaten by Defendants at Step I of grievances **AMF-18-05-1318-26a** and **AMF-18-06-1379-26a**, and those grievances were denied on the merits through Step III.  As a result, the undersigned concludes that there are genuine issues of fact as to whether Mays exhausted the First Amendment retaliation claims stated in claims 3, 5, 7, 9, 11, 13 and 15.

### c.  Retaliation Claim in Claim 1

Defendants do not directly challenge claim 1.  However, after reviewing the claims table and grievance tables in Sections IV and V, the undersigned concludes that Mays failed to exhaust claim 1.  In claim 1 relates to events on May 14, 2018. But neither grievance **AMF-18-05-1318-26a** nor **AMF-18-06-1379-26a** addresses an incident occurring on May 14, 2018.  Consequently, the undersigned concludes that there is no genuine issue of fact that Mays failed to properly exhaust claim 1.

### d.  Claims 21-50

The remainder of Mays's claims occurred after May 25, 2018, the date that Mays submitted his last relevant grievance (**AMF-18-06-1379-26a**) to Step I.  The

allegations underlying claims 22 through 50 were inserted into the grievance process by Mays in his Step II and III appeals of the two relevant grievances.   After reviewing the MDOC's responses to grievances **AMF-18-05-1318-26a** and **AMF-18-06-1379-26a** at Steps II and III, it is evident that the MDOC addressed only the allegations Mays raised at Step I, and did not address Mays's new allegations. Consequently, the undersigned concludes that Mays did not exhaust the claims he stated in claims 21-50.

Mays filed grievance **AMF-18-05-1318-26a** at Step I on May 21, 2018.   (ECF No. 16-11, PageID.253.)   As shown in the excerpt below, Mays alleged that several Defendants beat him on May 21, 2018, while he was being taken to the medical unit. (*Id.*)

(*Id.*)   About a month later, on June 25, 2018, the MDOC responded to Mays.   (*Id.*)
The MDOC had assigned Inspector Minerick to conduct the investigation, which
included interviews of Mays, applicable Defendants and RN Corrigan.   (*Id.*)   Mays
added nothing new, and the Defendants denied seeing or participating in an assault.
In addition, RN Corrigan stated that she saw no indication of an assault when she
saw Mays immediately after the alleged beating.   (ECF No. 16-11, PageID.253.)
Based upon these interviews and a review of the relevant security footage, Inspector
Minerick concluded that there was no substantiating evidence that the assault took
place and denied Mays's grievance.   (*Id.*)   His conclusion is shown below.

(*Id.*)

On July 12, 2018, Mays appealed to Step II.   (ECF No. 16-11, PageID.251.)
At the start of Mays's appeal, he inserted new allegations that occurred after May 25,
2018.   (*Id.*)   A portion of his Step II appeal is shown below.

- 21 -



(*Id.*)

Mays did not, however, file any additional grievances setting forth his new allegations.

The MDOC responded to Mays's Step II appeal on August 3, 2018. (*Id.*, PageID.252.)   On appeal, the MDOC did not address any of Mays's subsequent allegations.   (*Id.*)   Instead, the MDOC reviewed the Step I investigation and affirmed the denial.   (*Id.*)   As shown in the following excerpt, the MDOC mentioned RN Corrigan, but only as a witness to Mays's May 21, 2018 allegations, and not as the subject of an investigation.   (*Id.*)

- 22 -

SECOND STEP GRIEVANCE RESPONSE

| Mays | 218101 | 3-108 |
|---|---|---|
| Prisoner | Number | Lock |

| AMF | 1805-01318 | 26A |
|---|---|---|
| Facility | Grievance ID Number | Issue Code |

Your grievance has been reviewed.  Your claim is that staff assaulted you during a Health Service call-out. You do not specifically state what seeking for relief.

This investigator finds no violations of PD 04.05.110 *Use of force,* PD 04.05.112 *Managing Disruptive Prisoners* or PD 03.03.130 *Humane Treatment and Living Conditions for Prisoners.* The Step I respondent provided a thorough and complete explanation to your grievance issue. An investigation was completed by Acting Inspector Minerick. Its states in the investigation that the grievant was interviewed and told Inspector Minerick to "Get the Hell away from his Door". Rn Corrigan stated that Health Service has not received any request from prisoner Mays to be seen for an assault. Prisoner May came out for a Health Service call out on 5/23/18 for a vitals check and did not report any injuries from an assault. Inspector Minerick reviewed Unit 3 camera surveillance system when prisoner Mays was out of his cell for a Health Service call-out on 5/21/18. Inspector Minerick indicated in his report that there was no indication of a struggle or anything that would suggest that prisoner Mays was assaulted during the call-out. This investigator does not find any evidence to substantiate the claims of the grievant. In the absence of any additional information in your appeal to support your grievance claim, nothing further is required in response.

Based on the above, this grievance appeal is denied.

Warden's signature                                        8/3/18
                                                                  Date

(*Id.*)

Mays's Step III appeal was received by the MDOC on August 24, 2018.   (ECF No. 16-11, PageID.250-251.)   In his Step III appeal, Mays again inserts allegations that occurred after May 21, 2018, the date of the underlying assault. (*Id.*, PageID.251.)   A portion of his Step III appeal is shown below.



(*Id.*)

Again, Mays did not, however, file any additional grievances setting forth his new allegations.

Four days later, the MDOC responded to Mays's Step III appeal.   (*Id.*, PageID.250.)   The MDOC again constrained itself to Mays's Step I allegations and stated that Mays's issue had been investigated and the proper decision below was rendered.   (*Id.*)

**STEP III GRIEVANCE DECISION**

101227

26a

| | | | |
|---|---|---|---|
| **To Prisoner:** | Mays | **#:** | 218101 |
| **Current Facility:** | AMF | | |
| **Grievance ID #:** | AMF-18-05-1318-26a | | |
| **Step III Received:** | 8/24/2018 | | |

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office o
Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances".  Upon
examination it has been determined that your issue was in fact considered, investigated, and a
proper decision was rendered.

**THE STEP III APPEAL IS DENIED.**

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

Date Mailed:    AUG 2 8 2018

Richard D. Russell, **Manager Grievance
Section, Office of Legal Affairs**

(*Id.*)

The MDOC grievance process is simple.   Indeed, the MDOC form that Mays

used at Step I directed him to state his issue clearly and use a separate grievance

form for each issue.[5]   Mays did not comply with these requirements.   When a

---

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 10/94
CSJ 247A

Date Received at Step I ___5/25/18___  Grievance Identifier: |AMIF|1|8|0|5| 1|1|3|1|1|8|2|6|a| |

Be brief and concise in describing your grievance issue.  If you have any questions concerning the grievance
procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Marcus A. Mays | #218101 | AMF | 3-140 | 5-21-18 | 5-21-18 |

What attempt did you make to resolve this issue prior to writing this grievance?  On what date? THERE IS NO
If none, explain why. ON 5-21-18 I was taken to UNIT 3 medical Justifying
Exam Room by C/O Skylta And C/O Holly And Was MET by RETALIATORY
OTHER OFFICERS And BEAT Down by C/O Skrilda, Holly And EXCESSIVE FORCE
C/O PYNNONEN And UNKNOWN C/O FRANKIE WHICH WAS BY AMF SPOFF
State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted
to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.   cTHEN PUT IN a CHARE

5

prisoner adds new claims on appeal, "[t]he MDOC would essentially need a scorecard to track and address [the] evolving claims."   *Mays v. Pynnonen*, Case No. 2:17-cv-167 (W.D. Mich. Jan. 5, 2021), Report and Recommendation adopted, Case No. 2:17-cv-167 (W.D. Mich. Jan. 27, 2021).   By design, the MDOC grievance process is simple. The MDOC grievance process comports with one of the purposes of the exhaustion requirement stated in *Porter*:   that it "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."   534 U.S. at 525.   Adding new allegations of appeals to Steps II and III undercuts what is otherwise a simple process.   This Court recently held, in different lawsuit brought by Mays, that a prisoner cannot properly exhaust new allegations by inserting the new allegations into a Step II or Step III appeal of Step I decision, unless the MDOC's appeal response indicates that it considered and addressed the new allegations in its Step II or Step III decisions.[6]   *Mays v. Pynnonen*, Case No. 2:17-cv-167 (W.D. Mich. Jan. 5, 2021), Report and Recommendation adopted, Case No. 2:17-cv-167 (W.D. Mich. Jan. 27, 2021).

In this case, in grievance **AMF-18-05-1318-26a**, Mays again chose to insert new allegations in his Step II and III appeals rather than filing new grievances.   The

---

(ECF No. 16-11, PageID.253 (the MDOC Form CSJ-247A filed by Mays at Step I for Grievance AMF 18-05-1318-26a).)

[6]     The undersigned submits that rule adopted by this Court is complementary and a companion to the Sixth Circuit's precent.   *See Mattox*, 851 F.3d at 590-91 ("prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits").   This Court's companion rule simply reiterates that all subsequent allegations – in violation of prison policy – are not exhausted unless the prison indicates that it addressed those later-included allegations on appeal.

MDOC followed the requirements of the grievance policy directive, MDOC PD 03.02.130 ¶ EE, when it chose not to address and investigate Mays's new allegations. The policy requires Step II grievance coordinators to "ensure that any additional investigation was completed *as necessary* for each Step II grievance accepted and that a copy of the response is provided to the grievant by the due date."  (ECF No. 16-2, PageID.172 (emphasis added).)   MDOC was not required to investigate Mays's new allegations at Steps II or III because additional investigation was not *necessary* to assess the validity of the Step I response.   The grievance policy requires Step II and III appeals be written "briefly" and "concisely", and that they be "limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)."  (*Id*., PageID.170 (MDOC PD 03.02.130 ¶ R).)   Mays's subsequent allegations failed to meet these requirements and no new investigation was required.   (*Id*.)

Because MDOC chose not to address any new allegations on appeal, the undersigned concludes that Mays failed to exhaust the claims he added in his Step II and III appeals in grievance **AMF-18-05-1318-26a**.

With respect to grievance **AMF-18-06-1379-26a**, based upon the same reasoning, the undersigned concludes there is no genuine of fact that Mays failed to exhaust his remaining claims.   On June 5, 2018, Mays submitted a Step I grievance that was identified as grievance **AMF-18-06-1379-26a**.   (ECF No. 16-12, PageID.260.)   It should be noted, however, that Mays dated the grievance with May 25, 2018.   (*Id*.)   At Step I, Mays complained that Defendants failed to provide him with medical care for the injuries that resulted from the May 21, 2018 beating.   (*Id*.)

The last chronological allegation that Mays made at Step I was a denial of medical care on May 26, 2018 by RN Corrigan. (*Id.*, PageID.261.) A portion of his Step I grievance, which runs three pages in length, is shown below.

(*Id.*, PageID.260.)



(*Id.*, PageID.261.)

On June 28, 2018, in its response to grievance **AMF-18-06-1379-26a**, the MDOC cited its earlier investigation by Inspector Minerick into Mays's May 21, 2018 assault allegation. (ECF No. 16-12, PageID.260.)   Because the earlier investigation concluded that there was no evidence that an assault occurred, the MDOC denied grievance **AMF-18-06-1379-26a** at Step I.   (*Id.*)   The Step I response is shown below.



(*Id.*)

On July 12, 2018, Mays filed a three-page appeal to Step II.   (*Id.*, PageID.258, 263-264.)   In the very first sentence of this appeal, Mays adds a new claim regarding

an event occurring on May 27, 2018.   (*Id.*, PageID.258, 261.) His Step II appeal is

shown below.



(*Id.*, PageID.258.)

Mays did not file a separate grievance regarding his new claims.

On August 3, 2018, the MDOC responded and denied to Mays's Step II appeal.

(ECF No. 16-12, PageID.259.)   The MDOC reviewed Inspector Minerick's

investigation into Mays's underlying assault allegation and heard statements from

RNs Corrigan, Rajala, and Coon, who said there was no indication of an assault when

they saw Mays.   (*Id.*)   The MDOC's response does not indicate that it investigated

Mays's subsequent claims.

SECOND STEP GRIEVANCE RESPONSE

| Mays | 218101 | 3-108 |
|---|---|---|
| Prisoner | Number | Lock |
| AMF | 18-06-1379 | 26A |
| Facility | Grievance ID Number | Issue Code |

Your grievance has been reviewed.  Your claim is that staff assaulted you during a Health Service call-out on 5/21/18 and Health Service refused to treat your injuries. You do not specifically state what seeking for relief.

This investigator finds no violations of PD 04.05.110 *Use of force*, PD 04.05.112 *Managing Disruptive Prisoners* or PD 03.03.130 *Humane Treatment and Living Conditions for Prisoners*. The Step I respondent provided a thorough and complete explanation to your grievance issue. An investigation was completed by Acting Inspector Minerick. Its states in the investigation that the grievant was interviewed and told Inspector Minerick to "Get the Hell away from his Door". Rn Corrigan stated that Health Service has not received any request from prisoner Mays to be seen for an assault. Prisoner May came out for a Health Service call out on 5/23/18 for vitals check and did not report any injuries from an assault. Rn Corrigan stated that at no time on either 5/27/18 or 5/28/18 did prisoner Mays mention that he had injuries from being assaulted by staff. Rn Rajala and Rn Coon deny prisoner Mays mention to them anything about being assaulted and having injuries from an assault. Inspector Minerick reviewed Unit 3 camera surveillance system when prisoner Mays was out of his cell for a Health Service call-out on 5/21/18. Inspector Minerick indicated in his report that there was no indication of a struggle or anything that would suggest that prisoner Mays was assaulted during the call-out. This investigator does not find any evidence to substantiate the claims of the grievant. In the absence of any additional information in your appeal to support your grievance claim, nothing further is required in response.

Based on the above, this grievance appeal is denied.

Warden's signature                    Date
8/3/18

(*Id.*)

On August 24, 2018, Mays filed a two-page Step III appeal.  (ECF No. 16-12, PageID.257, 260.)  Mays again begins his appeal by inserting a new allegation regarding events that occurred on June 11, 2018.  (*Id.*)  A portion of his Step III appeal is shown below.

**STEP III — Reason for Appeal** ON 6-11-18 I told SUPERVISOR SYNDER ON 1ST SHORT ABOUT ALL PAIN I WAS IN CONCERNING EXCESSIVE FORCE INJURIES that was INFLICTED ON ME BY C/O STRHONEA, HOLLEY SKYHHA FRANTRY AND NURSE SYNDER AND HOUSE CORRISON OR 5-21-18 SHE SAUED I DON'T CARE AND YOU WON'T BE CALLED OUT MAYS SO QUIT SENDING YOU'R MEDICAL KIARS SO SIGNIA WELL OUR SUPERVISOR AS SHE LAUGH AND KEPT

**NOTE:** Only a copy of this appeal and the response will be returned to you. DOING HER ROUNDS

**STEP III —** Director's Response is attached as a separate sheet. SEE Page 2 OF STEP 3

**DISTRIBUTION:** White – Process to Step III; Green, Canary, Pink – Process to Step II; Goldenrod – Grievant   CONTINUATION OF THIS GRIEVANCE NEXT PAGE

(*Id.*)

Mays again did not file a separate grievance regarding his new claims.

On August 28, 2018, the MDOC responded and denied Mays's Step III appeal.

(*Id.*, PageID.257.)   The MDOC stated that it reviewed the investigation below and

that the decision below was proper.   (*Id.*)   There is no indication that the MDOC

addressed any later included allegation.

**STEP III GRIEVANCE DECISION**

101230
26a

| | | | |
|---|---|---|---|
| **To Prisoner:** | Mays | #: | 218101 |
| **Current Facility:** | AMF | | |
| **Grievance ID #:** | AMF-18-06-1379-26a | | |
| **Step III Received:** | 8/24/2018 | | |

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances".  Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered.

**THE STEP III APPEAL IS DENIED.**

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

Richard D. Russell, Manager Grievance
Section, Office of Legal Affairs

**Date Mailed:**   AUG 2 8 2018

(ECF No. 16-12, PageID.257.)

As before, Mays abused the grievance process by inserting subsequent allegations in his Step II and III appeals.  The MDOC, however, constrained its response to Mays's allegations made at Step I.   (ECF No. 16-12, PageID.257.)  Because the MDOC did not address any of Mays's subsequent allegations, the undersigned concludes that all of Mays's claims occurring after May 26, 2018 – claims 22 through 50 – were not exhausted.

## VIII.  Eleventh Amendment Issue

Defendants move to dismiss Mays's official capacity claims as barred by the Eleventh Amendment.  The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."   *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).   A district court in the Southern District of Ohio explained as follows:

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials.   *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989).   To the

extent that Plaintiff seeks money damages, costs, and fees from Defendants in their official capacities, that part of his lawsuit is barred by sovereign immunity.[7]

Here, however, Mays seems to only sue the Defendants in their individual capacities.   (ECF No. 1, PageID.4.)   At page 4 of his complaint, Mays states that he "each Defendant is being sued in both their individual capacity."   This portion of Mays's complaint is shown below.

(ECF No. 1, PageID.4.)   This statement does not make sense.   Perhaps Mays meant to say that he was suing the Defendant in "both their individual and their official capacities."   But he did not state that.   The Court interprets Mays's case as a lawsuit against the Defendants in their individual capacities.   Accordingly, this portion of Defendants' motion should be denied as moot.

But, assuming Mays is also suing Defendants in their official capacities and seeking damages, then his official capacity claims are barred by the Eleventh

---

[7]   "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity."   *S & M Brands, Inc. v. Cooper,* 527 F.3d 500, 507 (6th Cir. 2008).   Only the second exception is potentially at issue here. "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law."   *Id.*

Amendment because he failed to request injunctive relief in his complaint.  (*Id.*, PageID.25.)

## IX.    Recommendation

It is respectfully recommended that the Court grant Defendants' summary judgment motion as to claims 1, 16 and 22 through 50, and dismiss those claims without prejudice.   It is also respectfully recommended that the Court deny Defendants' motion as to claims 2 through 15 and 17 through 21.

If the Court accepts this recommendation, the claims 2 through 15 and 17 through 21 will remain.

Dated:     March 16, 2021               /s/ *Maarten Vermaat*
                                        _____
                                        MAARTEN VERMAAT
                                        U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).