UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARCUS D. MAYS #218101,　　　　　　　　　　Case No.　2:19-cv-00217

　　　　Plaintiff,　　　　　　　　　　　　　　　　　　　Hon.　Hala Y. Jarbou
　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. District Judge

v.

UNKNOWN SKYTTA, et al.,

　　　　Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I.　Introduction**

This Report and Recommendation (R&R) addresses the summary judgment motion filed by Defendants Sergeant (Sgt) Pynnonen, Corrections Officer (CO) Skytta, CO Holley, CO Fraki, Prison Counselor (PC) Bastian, Registered Nurse (RN) Snyder, RN Corrigan, RN Coon, RN Rajala, and RN Sundberg.　(ECF No. 53.)

The Plaintiff in this case – state prisoner Marcus D. Mays – filed this civil rights action pursuant to 42 U.S.C. § 1983.　He alleges that his rights were violated while he was confined at the Baraga Correctional Facility (AMF).　(ECF No. 1.) Mays originally asserted 50 claims against 14 Michigan Department of Corrections (MDOC) Defendants employed at AMF.　On April 19, 2021, this Court dismissed several claims because Mays had failed to exhaust his administrative remedies with respect to these claims.　(ECF No. 40.)　The remaining 19 claims are against 10 Defendants.　(*Id.*)　Plaintiff's verified complaint alleged that Defendants violated

1

the Eighth Amendment when they used excessive force against him while he was on the way to the medical unit and were deliberately indifferent to his medical needs. Mays also asserts that Defendants violated the First Amendment by assaulting him in retaliation for a past lawsuit that he had filed.

Defendants argue that Mays's claims are unsupported and plainly contradicted by the admissible evidence. First, Defendants point to Mays's long history of making fabricated claims of excessive force. Second, Defendants argue that Mays's claim of excessive force was investigated by the AMF inspector, who reviewed surveillance video that showed no struggle or assault during Mays's May 21, 2018, healthcare visit. Third, Defendants assert that Mays's medical records beginning May 23, 2018, show no record of an assault and no injuries. Finally, Defendants deny the allegations of assault and denial of medical care.

It is respectfully recommended that the Court grant in part and deny in part Defendants' summary judgment motion. In the opinion of the undersigned, based upon the record before the Court, a genuine issue of material fact exists regarding whether Defendants used excessive force on Mays and retaliated against him on May 21, 2018. The record does establish that no genuine issue of fact exists as to whether Mays was denied medical care between May 21 and May 25, 2018. The record shows that Mays received medical care and that Defendants were not deliberately indifferent to a serious medical need.

2

## II. Factual Allegations

The 19 claims that survived the Defendants' earlier summary judgment motion are summarized in the table below.

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1. | Skytta | Eighth Amendment Excessive Force | 5/21/18 | Skytta, Fraki, and Holley allegedly kicked and punched Mays repeatedly while he was on the ground. (ECF No. 1, PageID.5) |
| 2. | Skytta | First Amendment Retaliation | 5/21/18 | Skytta, Fraki, and Holley allegedly retaliated against Mays by kicking and punching Mays repeatedly while he was on the ground. (ECF No. 1, PageID.5) |
| 3. | Pynnonen | Eighth Amendment Excessive Force | 5/21/18 | Pynnonen allegedly put Mays in a choke hold. (ECF No. 1, PageID.5) |
| 4. | Pynnonen | First Amendment Retaliation | 5/21/18 | Pynnonen allegedly retaliated against Mays by putting Mays in a choke hold. (ECF No. 1, PageID.5) |
| 5. | Holley | Eighth Amendment Excessive Force | 5/21/18 | Skytta, Fraki, and Holley allegedly kicked and punched Mays repeatedly while he was on the ground. (ECF No. 1, PageID.5) |
| 6. | Holley | First Amendment Retaliation | 5/21/18 | Skytta, Fraki, and Holley allegedly retaliated against Mays by kicking and punching Mays repeatedly while he was on the ground. (ECF No. 1, PageID.5) |
| 7. | Fraki | Eighth Amendment Excessive Force | 5/21/18 | Skytta, Fraki, and Holley allegedly kicked and punched Mays repeatedly while he was on the ground. (ECF No. 1, PageID.5) |

3

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 8. | Fraki | First Amendment Retaliation | 5/21/18 | Skytta, Fraki, and Holley allegedly retaliated against Mays by kicking and punching Mays repeatedly while he was on the ground. (ECF No. 1, PageID.5) |
| 9. | Snyder | Eighth Amendment Excessive Force | 5/21/18 | Snyder and Corrigan allegedly kicked Mays in the stomach twice. (ECF No. 1, PageID.5) |
| 10. | Snyder | First Amendment Retaliation | 5/21/18 | Snyder and Corrigan allegedly retaliated against Mays by kicking Mays in the stomach twice. (ECF No. 1, PageID.5) |
| 11. | Corrigan | Eighth Amendment Excessive Force | 5/21/18 | Snyder and Corrigan allegedly kicked Mays in the stomach twice. (ECF No. 1, PageID.5) |
| 12. | Corrigan | First Amendment Retaliation | 5/21/18 | Snyder and Corrigan allegedly retaliated against Mays by kicking Mays in the stomach twice. (ECF No. 1, PageID.5) |
| 13. | Bastion | Eighth Amendment Deliberate Indifference | 5/21/18 | Bastian allegedly observed Mays being beaten and failed to protect him. (ECF No. 1, PageID.5) |
| 14. | Pynnonen | First Amendment Retaliation | 5/21/18 | Pynnonen retaliated against Mays by threatening to take away Mays' property and give him more tickets. Moreover, Pynnonen allegedly said, "you were a stage 5, now you are a stage 1." (ECF No. 1, PageID.5) |
| 15. | Coon | Eighth Amendment Deliberate Indifference | 5/22/18 | Mays told RN Coon about his injuries and was denied treatment. (ECF No. 1, PageID.9) |

4

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 16. | Rajala | Eighth Amendment Deliberate Indifference | 5/23/18 | Mays told RN Rajala about his injuries plus a migraine headache and was denied treatment (first shift). (ECF No. 1, PageID.9) |
| 17. | Sundberg | Eighth Amendment Deliberate Indifference | 5/23/18 | RN Sundberg was shown Mays's injuries and denied treatment. (ECF No. 1, PageID.9) |
| 18. | Sundberg | Eighth Amendment Deliberate Indifference | 5/25/18 | Mays received no response from RN Sundberg. (ECF No. 1, PageID.9) |
| 19. | Corrigan | Eighth Amendment Deliberate Indifference | 5/26/18 | While doing routine medical rounds, RN Corrigan told Mays that she had better things to do with her time than treat Mays' injuries, which, according to Mays, were a swollen painful jaw, black eye and lip, a small knot on his head, and a bruised and battered body. (ECF No. 1, PageID.9-10) |

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

5

242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

IV. **Eighth Amendment**

1. **Excessive Force (claims 1, 3, 5, 7, 9, 11, and 13)**

Mays alleges that he was assaulted by CO Skytta, Sgt Pynnonen, CO Holley, CO Fraki, RN Snyder, and RN Corrigan during his May 21, 2018, health care visit. Mays says that Defendants CO Skytta and CO Holley punched him, and Defendants CO Skytta, CO Holley, Sgt Pynnonen and CO Fraki kicked him after he fell to the ground. Mays says that Defendant Sgt Pynnonen placed him in a choke hold cutting off his air and damaging his throat. Defendants RN Snyder and RN Corrigan allegedly kicked Mays twice in the stomach. Mays alleges that Defendant PC Bastion observed the assault and failed to protect Mays.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous", nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."

*Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

To establish an Eighth Amendment claim, a plaintiff must satisfy both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). "The objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson*, 501 U.S. at 298). "The subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d at 383.

While all Eighth Amendment claims involve an objective and a subjective component, the objective component is contextual and therefore varies depending on the claim asserted. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The degree of harm necessary to satisfy the objective component depends on "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Not "every malevolent touch by a prison guard gives rise to an Eighth Amendment cause of action." *Hudson*, 503 U.S. at 9. But when prison or jail officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, "[w]hether or not significant injury is evident." *Id.* Thus, while the extent of an inmate's injury may help determine the amount of force used by the prison or jail official, it is not dispositive of whether an Eighth Amendment violation based on excessive force has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). The essential inquiry for an Eighth Amendment claim of excessive force is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and

7

sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

Defendants argue that no evidence supports Mays's claim of assault, and that all the admissible evidence contradicts his claims. Mays claims that the assault occurred. Each Defendant says that no assault occurred. Acting Inspector Shawn Minerick investigated Mays's claim of excessive use of force. Acting Inspector Minerick wrote:

> RN Snyder was interviewed and stated that she was not in the HS room for the callout. RN Corrigan was interviewed and said that Mays came out for a routine vitals check. She stated that she did not assault Mays and did not witness Mays get assaulted by anyone.
>
> C/O Holley and C/O Skytta were interviewed and stated that they did not assault Mays and did not see Mays get assaulted by anyone. They said that Mays was upset when he returned to his cell and seen that his incentive TV was removed for previous negative behavior on 5/14/18. Prisoner Mays was written a Threatening Behavior misconduct and was found guilty on 5/21/18.
>
> RN Corrigan stated that HS has not received any requests from prisoner Mays to be seen for an assault. Prisoner Mays came out for a HS callout on 5/23/18 for vitals check and did not report any injuries from an assault.
>
> I reviewed the Unit 3 camera surveillance system when Prisoner Mays was out of his cell for the HS callout on 5/21/18. There was no indication of a struggle or anything that would suggest that prisoner Mays was assaulted during the callout. There is no evidence to support the claims made by prisoner Mays.

(ECF No. 54-2, PageID.443 (MDOC Memorandum dated 6/4/18).)[1]

---

[1] In addition to Defendants' affidavits, other potentially admissible evidence consists of a Step I supplemental grievance response form (ECF No. 54-7, PageID.456) and medical records (*Id.*, PageID.458-509). The Unit 3 camera footage, which likely would be dispositive on the issue of whether Mays was assaulted, is not a matter of record. Defendants provide no explanation as to why this camera footage, the best evidence, was not presented in support of their summary judgment motion, especially because the Acting Inspector wrote that he found no evidence of assault based upon this video. Mays suggests the reason in his response brief. Mays says that there were no cameras in the room where he was assaulted. (ECF

8

Based upon the record presented to the Court, the question of whether Plaintiff was assaulted on May 21, 2018, is a credibility determination that this Court cannot decide on summary judgment. Mays says the assault occurred. (ECF No. 1, PageID.5-8, ECF No. 60-1, PageID.597-598.) On the other hand, Defendants say the assault never happened.

Defendants note that Mays failed to establish any visible injuries two days after the alleged assault. (*See* ECF No. 54 (Defendants' brief summarizing Mays's medical records for the relevant period).) The injuries described by Mays, which include pain and swelling around his neck, are relatively minor injuries that may have not been visible two days after the incident. In addition, as noted above, the absence of injury is not dispositive of whether an Eighth Amendment violation based on excessive force has occurred.

Defendants also note that Mays has a long history of making farfetched and impossible claims. (ECF No. 54, PageID.427-28.)

Beyond these points, Defendants Sgt Pynnonen and CO Fraki claim that they were not present during the alleged assault. (ECF No. 54-10, PageID.515 (Affidavit of Sgt Pynnonen); ECF No. 59, PageID.560 (Affidavit of CO Fraki).) Defendant Sgt Pynnonen says that he was not working that day and Defendant CO Fraki claims that he was not in unit 3 on that day. Mays says that they were present during the alleged assault and involved. (ECF No. 1, PageID.5, ECF No. 60-1, PageID.597.)

---

No. 60, PageID.587.)

9

Defendants have submitted affidavits but have failed to present any corroborating evidence such as work records or video evidence that could confirm that they were not working in Mays's unit on May 21, 2018.

In the opinion of the undersigned, based upon the record before the Court, an issue of fact exists regarding whether Defendants CO Skytta, Sgt Pynnonen, CO Holley, CO Fraki, RN Snyder, and RN Corrigan used excessive force against Mays and whether Defendant PC Bastion failed to prevent these Defendants from using excessive force against Mays.

**2. Medical Care (claims 15-19)**

Mays makes several claims regarding the denial of medical treatment against Defendants RN Coon, RN Rajala, RN Sundberg, and RN Corrigan. Mays says that on May 22, 2018, Defendant RN Coon denied him treatment for his injuries and Defendants RN Rajala denied him treatment for his injuries including a migraine headache. (ECF No. 1, PageID.9.) Mays says that on May 23, 2018, RN Sundberg denied him treatment for his injuries and failed to respond to his request for treatment on May 25, 2018. (*Id.*) Finally, Mays says that RN Corrigan denied him treatment on May 26, 2018, while she was doing rounds in his unit, because "she had better things to do." (ECF No. 1, PageID.9-10.)

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as the failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately

10

indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that ***delay in medical treatment*** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's ***failure to treat a condition adequately***, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

11

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.

> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).

13

This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

14

The medical records establish that Mays was given a health assessment and examined by RN Corrigan on May 21, 2018.  (ECF No. 54-8. PageID.474-475.)  RN Corrigan measured Mays's height and weight, and took his blood pressure, temperature, and pulse.  Later that morning, RN Duquette scheduled Mays for a sick call for May 23, 2018, due to complaints of "ongoing injuries" – "persistent headaches, sore throat w/burning, and blisters in my nose".  (*Id.*, PageID.473.)  On May 23, 2018, RN Rajala examined Mays for complaints of a sore throat, sores in his nose, and headaches because his Excedrin was taken away.  (*Id.*, PageID.471.)  RN Rajala found no sores, discharge or drainage, and that Mays's mouth was unremarkable.  (*Id.*)  Mays was instructed to increase his fluid intake, apply cold compress to affected area, and reminded that Excedrin was no longer available and that he should take OTC medications for headaches.  (*Id.*)

On May 25, 2018, RN Sundberg entered a Clinical Progress Note.  RN Sundberg noted that she was notified by custody staff that she could not check Mays's blood pressure due to his "disruptive & threatening behavior with staff this morning." (*Id.*, PageID.469.)

The medical record shows that Mays did not have an objective serious need for medical care between May 21 and 26, 2018.  Mays was examined by medical staff on May 21, 23, and 25, 2018 for minor complaints involving a sore throat, sores in his nose, and headaches.  Mays was told to use OTC medication for pain such as headaches, to increase his fluid intake, and to use a cold compress on affected areas. In the opinion of the undersigned, Mays has failed to show either an objective need

15

for medical treatment for a serious medical condition or that any Defendant acted subjectively with deliberate indifference toward his medical needs. In the opinion of the undersigned, May's claims of deliberate indifference to his medical needs against Defendants RN Coon, RN Rajala, RN Sundberg, and RN Corrigan should be dismissed.

### V. Retaliation (claims 2, 4, 6, 8, 10, 12, 14)

Mays alleges that On May 21, 2018, Defendants CO Skytta, Sgt Pynnonen, CO Holley, CO Fraki, RN Snyder, and RN Corrigan assaulted him in retaliation and Defendant Sgt Pynnonen retaliated against him by threatening to take away property. Defendants argue that because Mays cannot show that he was assaulted by these Defendants, his retaliation claims fail. As stated above, a question of fact exists as to whether Mays was assaulted by these Defendants on May 21, 2018. In the opinion of the undersigned, there exists a question of fact regarding whether Defendants retaliated against Mays by assaulting him.

### VI. Recommendation

It is respectfully recommended that the Court grant in part and deny in part Defendants' motion for summary judgment.

It recommended that the Court grant the motion, in part, dismissing Mays's Eighth Amendment deliberate indifference to his serious medical need claims (claims 15-18) dismissing Defendants RN Coon, RN Rajala, and RN Sundberg. In addition, it is recommended that the Court dismiss the Eighth Amendment deliberate indifference claim against Defendant RN Corrigan (claim 19).

It is recommended that the Court deny the motion as to Mays's Eighth Amendment excessive force claims against Defendants CO Skytta (claim 1) Sgt Pynnonen (claim 3), CO Holley (claim 5), CO Fraki (claim 7), RN Snyder (claim 9), RN Corrigan (claim 11) and PC Bastion (claim 13), and Plaintiff's First Amendment retaliation claims against Defendants CO Skytta (claim 2), Sgt Pynnonen (claim 4 and 14), CO Holley (claim 6), CO Fraki (claim 8), RN Snyder (claim 10), and RN Corrigan (claim 12).

If the Court accepts this recommendation, the remaining claims will be for excessive force and retaliation (claims 1-14) against Defendants CO Skytta, Sgt Pynnonen, CO Holley, CO Fraki, RN Snyder, RN Corrigan, and PC Bastion.

Dated:   May 27, 2022                              /s/ *Maarten Vermaat*
                                                                              MAARTEN VERMAAT
                                                                              U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).